CUSHING MITCHELL *et al. versus* BARZA KINGMAN.

A person may plead that he was *non compos mentis*, or show it in evidence under the general issue, in avoidance of his contract.

If he pleads by attorney, and upon examination it appears that his incapacity continues, the plea may be treated as a nullity and a guardian *ad litem* be appointed who may plead *de novo*.

ASSUMPSIT upon a promissory note. The defendant, by his attorney, pleaded the general issue.

At the trial in the Court of Common Pleas, the plaintiffs having produced the note and proved the defendant's signature, the defendant offered to prove that at and before the making thereof he was, and ever since had been, an idiot and incapable of making a valid contract; but *Williams* J. ruled that he was not, by law, entitled to this evidence. The jury having found a verdict for the plaintiffs, the defendant filed his exceptions to this direction.

*Eddy*, in support of the exceptions, contended that a man might stultify himself; 1 Chit. Pl. 470; 1 Fonbl. 46; Fitzh. N. B. 202; Hammond's Dig. in Eq. 17, note; *Faulder v. Silk*, 3 Campb. 126; 2 Dane's Abr. 21; *Thompson v. Leach*, 2 Salk. 427, 675; *Yates v. Boen*, 2 Str. 1104; Bull. N. P. 172; 2 Stark. Ev. 479; *Webster v. Woodford*, 3 Day, 90;— and that an idiot might plead by attorney, if of age; 2 Wms's Saund. 333, note 4; 1 Chit. Pl. 529; *Beverley's case*, 4 Co. 124.

*Baylies*, *contrà*, cited on the first point, 2 Bl. Comm. 292, *Stroud v. Marshall*, Cro. Eliz. 398; *Cross v. Andrews*, ibid. 622;— and on the other point, 3 Bac. Abr. 541, *Idiots, &c.*, G; Com. Dig. *Idiot, A, D* 7; 1 Chit. Pl. 529; Mitf. Pl. 83; 2 Mad. Ch. Pr. 576; Co. Lit. 135 *b*.

The opinion of the Court was delivered at this term by

WILDE J. The principal question in this case, namely, whether a person *non compos mentis* can be allowed by law to plead his disability in avoidance of his contracts, is certainly a question of some difficulty.

It is said to be a maxim of the common law, that no man of full age shall be allowed by plea to stultify himself, and

*Oct. 1826*

*432*

*Oct. 27th*

<div style="float:left">Mitchell<br>v.<br>Kingman.</div>

thereby to avoid his own deed or contract. This is affirmed by Lord *Coke* in *Beverley's case*, 4 Co. 123, and also in his commentary on Littleton ; (Co. Lit. 147 ;) and since his time seems to have been generally admitted as a settled principle ; but without much consideration.

On the other hand, Fitzherbert denies that this was ever a maxim of the common law. And Britton and Bracton maintain the same opinion. This opinion is likewise supported by the case referred to by Fitzherbert : and by the form of the writ in the Register. The words are, " *dum fuit non compos mentis suœ, ut dicit,*" &c.

Blackstone says (2 Comm. 291) that the notion, that a man should not be permitted to disable or blemish himself, first began to arise in the reign of Edward 3 ; and it was as late as the reign of Henry 6, before it was sanctioned by any judicial determination. It would seem, therefore, that Lord *Coke* was not correct in saying that the maxim in question was a rule of the common law. In a question relating to the ancient common law, it seems to me that the authority of the Register should be admitted as conclusive, especially where other sources of information are doubtful and contradictory.

But few decided cases on this point are to be found since the case of *Beverley*. But it was decided as late as the year 1737, in the case of *Yates* v. *Boen*, 2 Str. 1104, that lunacy might be given in evidence to avoid a contract. This was a case of debt on articles, and upon *non est factum* pleaded, the defendant offered to give lunacy in evidence. The chief justice (Lee) at first thought it ought not to be admitted, upon the rule in *Beverley's case* ; but on the authority of *Smith* v. *Carr*, in which it was admitted by Chief Baron Pengelly, and the case of *Thompson* v. *Leach*, 2 Ventr. 198, he suffered it to be given in evidence. This case is cited with approbation by Buller ; (Buller's N. P. 172 ;) and also in the case of *Webster* v. *Woodford*, 3 Day, 90 ; in which it was decided, after a full examination of the question, that a person *non compos mentis* might be permitted to plead his own disability in avoidance of his contract.

It appears therefore on examination, that the supposed maxim of the common law relied on by the plaintiffs, is of doubtful

origin and authority. Nor should we feel ourselves bound to adopt it, although it were supported by less questionable English authorities, because the property and interests of idiots and lunatics are not protected here, as they are in England, by the royal prerogative. There, if an idiot alien his lands, the king, after office found, may upon *scire facias* against the alienee, recover the lands to the use of the idiot, and thereupon they will revest in him. And so if the idiot be sued in any action upon a bond or other contract, the king, by his writ, shall send a *supersedeas* to the justices where the suit is commenced. And the law is the same when a person becomes *non compos*. *Beverley's case,* 4 Co. 126. But even in England there seems to be neither reason nor necessity for adopting the rule in question ; a rule which Fonblanque says was adopted "in defiance of natural justice, and the universal practice of all the civilized nations in the world." 1 Fonbl. Eq. 46. That it is against natural justice is manifest ; because a man in a fit of insanity may make a contract, which, after the recovery of his reason, might be enforced against him under the rule, although made without consideration, provided it be under seal. For neither in England, nor here, can a committee or guardian be appointed to a lunatic, or insane person, after the recovery of his reason. If, therefore, in such a case, the defendant could not avoid the deed, by pleading his insanity at the time of the contract, he would be without defence ; and thus by the visitation of Providence, followed up by a rule of law, a man without fault might be despoiled of his property and utterly ruined.

It is said that the rule, however unjust its operation may sometimes prove, is nevertheless founded in public policy. The law does not proceed, says Powell, upon the ground that the party is bound ; for that cannot be, seeing that by the law of nature, he wants the capacity to assent to a contract ; but because the policy of the law, which rather submits to a particular mischief than a public inconvenience, sets bounds to the law of nature in point of form and circumstance. Pow. Contr. 21. But if this reason were allowed, and applied generally, the course of justice would be obstructed at every step, and courts of law would be worse than useless ; for

Mitchell
v.
Kingman.

there are many other frauds much easier to practise than that of counterfeiting insanity. But a party is not to be deprived of a just defence, because he may by possibility practise fraud and imposition. We might as well reject all human testimony because witnesses may be perjured. But admitting that insanity might be easily feigned, (which however is not the fact,) we see no reason why the law should interfere in favor of a party who had contracted with a person believing him to be insane. It would seem to be a more enlightened policy to discourage the making of contracts under such circumstances, rather than to facilitate the means of enforcing them.

We are of opinion, therefore, that the Court of Common Pleas erred in rejecting the evidence offered by the defendant at the trial.[1] He offered to prove that at and before the making of the note declared on, he was and still continued to be an idiot and incapable of making a valid contract. If the fact were so, then the court were bound to appoint a guardian *ad litem.* But if he was at the time of the trial restored to his reason, then he might plead his former disability by attorney, or might prove it under the general issue. The rules of practice in chancery, as laid down by Mitford, seem to us to be founded in good sense, and to be well adapted to the ordinary administration of justice. When a bill is filed against an idiot or lunatic, the committee of his estate, if there is one, must be made defendant with him. Mitf. Pl. 24. And he must defend by his committee, who is by order of the court appointed a guardian for that purpose as a matter of course. But if he has no committee, or the committee has an interest adverse to his, another person may be guardian for the pur

---

[1] In *Seaver* v. *Phelps*, 11 Pick. 304, the doctrine of the above case has been again declared to be sound, and the established law of this Commonwealth, notwithstanding some recent decisions in England, which seem to hold a different doctrine. See *Browne* v. *Joddrell*, 1 Moody & Malk. 105; *Bagstar* v. *Earl of Portsmouth*, 5 Barn. & Cressw. 172; *S. C.* 7 Dowl. & Ryl. 614; Chitty on Contracts, (3d Am. ed.) 256.

In *Grant* v. *Thompson*, 4 Connect. R. 204, the defence of insanity was admitted to an action on a promissory note. See also Chitty on Contracts, (3d Am. ed.) 29, 30, and notes; *Lang* v. *Whidden*, 2 N. Hamp. R. 435 · *Rice* v. *Peet*, 15 Johns. R. 503; 1 Story on Equity, 227, 231.

pose of defending the suit. So if a person who is in the condition of an idiot or lunatic, though not found such by inquisition, is made a defendant, the court upon information of his incapacity will appoint a guardian. Ibid. 82.

It is said truly, that if the defendant was *non compos* at the time of the trial, he had no right to appear and plead by attorney. But if it should appear on examination that he is still *non compos*, the plea by attorney may before judgment be treated as a nullity ; and a guardian will be appointed, who will be entitled to plead *de novo*.[1]

For this purpose the verdict is to be set aside, and a new trial granted at the bar of this Court.

---

[1] See Revised Stat. c. 93, § 22.